## UNITED STATES DISTRICT COURT
## DISTRICT OF IDAHO

DAVID W. WEAVER,

Petitioner,

vs.

MICHAEL J. ASTRUE, Commissioner of Social Security,

Respondent.

Case No. 1:11-cv-00384-REB

**MEMORANDUM DECISION AND ORDER**

Pending before the Court is Petitioner David Weaver's Petition for Review (Dkt. 1), filed August 17, 2011, seeking review of the Social Security Administration's final decision to deny his disability benefits.  This action is brought pursuant to 42 U.S.C. § 405(g).  Having carefully reviewed the record and otherwise being fully advised, the Court enters the following Memorandum Decision and Order.

## I.  ADMINISTRATIVE PROCEEDINGS

On February 28, 2008, David Weaver ("Petitioner") applied for SSI disability benefits, alleging a disability onset date of December 2, 2005, when he was 46 years old.  Petitioner's claim was initially denied and, again, denied on reconsideration.  (AR 97-110, 115-32).  Petitioner timely filed a Request for Hearing before an Administrative Law Judge ("ALJ").  (AR 133-34).  On March 22, 2010, ALJ Lloyd E. Hartford held a hearing in Boise, Idaho, at which time Petitioner, represented by attorney Dan Bott, appeared and

**MEMORANDUM DECISION AND ORDER - 1**

testified.  (AR 40-96).  A mental health medical expert, Dr. James Bruce, and a vocational

expert, Polly Peterson, also appeared and testified.

At the time of the hearing, Petitioner had past relevant work as a janitor and night

manager.  (AR 22).  Petitioner last attended school in the 11th grade, but he did not

complete that year.  AR 57-58.

On July 7, 2010, the ALJ issued a decision, denying Petitioner's claims, finding

that Petitioner was not disabled within the meaning of the Social Security Act.  (AR 14-

24).  Petitioner timely requested review from the Appeals Council; the Appeals Council

then denied review on July 15, 2011 (AR 7) rendering the ALJ's decision the

Commissioner's final decision.  Plaintiff now seeks judicial review of the

Commissioner's decision to deny benefits.  Petitioner contends the ALJ erred by failing to

properly evaluate (1) Petitioner's credibility and (2) the limitations caused by Petitioner's

physical impairments.

## II. STANDARD OF REVIEW

To be upheld, the Commissioner's decision must be supported by substantial

evidence and based on proper legal standards.  42 U.S.C. § 405(g); *Matney ex. rel.

Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992); *Gonzalez v. Sullivan*, 914 F.2d

1197, 1200 (9th Cir. 1990). Findings as to any question of fact, if supported by substantial

evidence, are conclusive.  42 U.S.C. § 405(g).  In other words, if there is substantial

evidence to support the ALJ's factual decisions, they must be upheld, even when there is

**MEMORANDUM DECISION AND ORDER - 2**

conflicting evidence.  *Hall v. Sec'y of Health, Educ. & Welfare*, 602 F.2d 1372, 1374 (9th Cir. 1979).

"Substantial evidence" is defined as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Tylitzki v. Shalala*, 999 F.2d 1411, 1413 (9th Cir. 1993); *Flaten v. Sec'y of Health & Human Servs*., 44 F.3d 1453, 1457 (9th Cir. 1995).  The standard requires more than a scintilla but less than a preponderance, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n. 10 (9th Cir.1975); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989), and "does not mean a large or considerable amount of evidence."  *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

With respect to questions of fact, the role of the Court is to review the record as a whole to determine whether it contains evidence that would allow a reasonable mind to accept the conclusions of the ALJ.  *See Richardson*, 402 U.S. at 401; *see also Matney*, 981 F.2d at 1019. The ALJ is responsible for determining credibility and resolving conflicts in medical testimony, *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984), resolving ambiguities, *see Vincent ex. rel. Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984), and drawing inferences logically flowing from the evidence, *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982).  Where the evidence is susceptible to more than one rational interpretation in a disability proceeding, the reviewing court may not substitute its judgment or interpretation of the record for that of the ALJ.  *Flaten*, 44 F.3d at 1457; *Key v. Heckler*, 754 F.2d 1545, 1549 (9th Cir. 1985).

**MEMORANDUM DECISION AND ORDER - 3**

With respect to questions of law, the ALJ's decision must be based on proper legal standards and will be reversed for legal error. *Matney*, 981 F.2d at 1019. The ALJ's construction of the Social Security Act is entitled to deference if it has a reasonable basis in law. *See id*. However, reviewing federal courts "will not rubber-stamp an administrative decision that is inconsistent with the statutory mandate or that frustrates the congressional purpose underlying the statute." *Smith v. Heckler*, 820 F.2d 1093, 1094 (9th Cir. 1987).

## III. DISCUSSION

### A.   Sequential Process

In evaluating the evidence presented at an administrative hearing, the ALJ must follow a sequential process in determining whether a person is disabled in general (*see* 20 C.F.R. §§ 404.1520, 416.920) - or continues to be disabled (*see* 20 C.F.R. §§ 404.1594, 416.994) - within the meaning of the Social Security Act.

The first step requires the ALJ to determine whether the claimant is engaged in substantial gainful activity ("SGA"). 20 C.F.R. §§ 404.1520(a)(4)(I), 416.920(a)(4)(I). SGA is defined as work activity that is both substantial and gainful. "Substantial work activity" is work activity that involves doing significant physical or mental activities. 20 C.F.R. §§ 404.1572(a), 416.972(a). "Gainful work activity" is work that is usually done for pay or profit, whether or not a profit is realized. 20 C.F.R. §§ 404.1572(b), 416.972(b). If the claimant has engaged in SGA, disability benefits are denied, regardless of how severe her physical/mental impairments are and regardless of her age, education,

**MEMORANDUM DECISION AND ORDER - 4**

and work experience.  20 C.F.R. §§ 404.1520(b), 416.920(b).  If the claimant is not

engaged in SGA, the analysis proceeds to the second step.  Here, the ALJ found that

Petitioner had not engaged in SGA since December 2, 2005, the alleged onset date.  (AR

16).

The second step requires the ALJ to determine whether the claimant has a

medically determinable impairment, or combination of impairments, that is severe and

meets the duration requirement.  20 C.F.R. § 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  An

impairment or combination of impairments is "severe" within the meaning of the Social

Security Act if it significantly limits an individual's ability to perform basic work

activities.  20 C.F.R. §§ 404.1520(c), 416.920(c).  An impairment or combination of

impairments is "not severe" when medical and other evidence establish only a slight

abnormality or a combination of slight abnormalities that would have no more than a

minimal effect on an individual's ability to work.  20 C.F.R. §§ 404.1521, 416.921.  If the

claimant does not have a severe medically determinable impairment or combination of

impairments, disability benefits are denied.  20 C.F.R. §§ 404.1520(c), 416.920(c).  Here,

the ALJ found that Petitioner had the following severe impairments: "status post

arthroscopic subacromial decompression of right shoulder, arthroscopic excision of right

distal clavicle, and mini-open repair of right rotator cuff, supraspinatus tendon; chronic

back pain, status post fusion; chronic obstructive pulmonary disease with history of

pneumonia; obstructive sleep apnea; major depression; generalized anxiety disorder, with

**MEMORANDUM DECISION AND ORDER - 5**

free-floating anxiety, panic attacks with agoraphobia and obsessive-compulsive features; avoidant personality disorder; history of alcohol abuse in remission." (AR 16).

The third step requires the ALJ to determine the medical severity of any impairments; that is, whether the claimant's impairments meet or equal a listed impairment under 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the answer is yes, the claimant is considered disabled under the Social Security Act and benefits are awarded. 20 C.F.R. §§ 404.1520(d), 416.920(d). If the claimant's impairments neither meet nor equal one of the listed impairments, the claimant's case cannot be resolved at step three and the evaluation proceeds to step four. *Id.* Here, the ALJ concluded that Petitioner does not have an impairment (or combination of impairments) that meets or medically equals a listed impairment (AR 17).

The fourth step of the evaluation process requires the ALJ to determine whether the claimant's residual functional capacity is sufficient for the claimant to perform past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). An individual's residual functional capacity is her ability to do physical and mental work activities on a sustained basis despite limitations from her impairments. 20 C.F.R. §§ 404.1545, 416.945. Likewise, an individual's past relevant work is work performed within the last 15 years or 15 years prior to the date that disability must be established; also, the work must have lasted long enough for the claimant to learn to do the job and be engaged in substantial gainful activity. 20 C.F.R. §§ 404.1560(b), 404.1565, 416.960(b), 416.965.

**MEMORANDUM DECISION AND ORDER - 6**

Here, the ALJ determined that Petitioner is unable to perform any past relevant work. (AR 22).

In the fifth and final step, if it has been established that a claimant can no longer perform past relevant work because of his impairments, the burden shifts to the Commissioner to show that the claimant retains the ability to do alternate work and to demonstrate that such alternate work exists in significant numbers in the national economy.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1520(f), 416.920(f); *see also Matthews v. Shalala*, 10 F.3d 678, 681 (9th Cir. 1993).  If the claimant is able to do other work, he is not disabled; if the claimant is not able to do other work and meets the duration requirement, he is disabled.  The ALJ considered Petitioner's age, education, work experience, and residual functional capacity and determined that there are jobs existing in significant numbers in the national economy that Petitioner can perform.  (AR 22).

**MEMORANDUM DECISION AND ORDER - 7**

**B.   Analysis**

**1.   Petitioner's Credibility**

Petitioner contends that the ALJ gave insufficient reasons for finding him not credible.[1]  Pet.'s Br., p. 12 (Dkt. 13).  The ALJ described Petitioner's testimony as indicating the following: "he suffers from pain in his back and right shoulder, has difficulty standing, walking, bending, and lifting, experiences shortness of breath, and needs to lie down on a regular basis."  AR 19.  The ALJ went on to find that Petitioner's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however [his] statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent" with the ALJ's description of Petitioner's residual functional capacity ("RFC").  AR 19-20.

The ALJ ruled that Petitioner had the RFC to perform light work with some limitations.  AR 19-22.  He concluded that the Petitioner could only occasionally stoop, crouch, and climb ladders, ropes, or scaffolds, but he could frequently balance, kneel, crawl, and climb ramps and stairs.  AR 19.  Additionally, the ALJ found that Petitioner must avoid concentrated exposure to such things as vibration, hazards (machinery, heights, etc.), fumes, odors, dusts, gases, and poor ventilation.  AR 19.

---

[1]  Although this appears as the second issue in Petitioner's Opening Brief, because the ALJ's credibility findings impact the second issue, *i.e.*, the ALJ's consideration of Petitioner's testimony with regard to the limitations assessed, the Court will address credibility first in this Order.

**MEMORANDUM DECISION AND ORDER - 8**

The Court agrees with Petitioner that a claimant is not required to be utterly incapacitated to be eligible for benefits. However, the ALJ did not reject all of Petitioner's claimed limitations wholesale; rather, he questioned Petitioner's statements concerning the intensity, persistence, and limiting effects of his symptoms.

>    a.    *Legal Standards*

The ALJ must determine credibility, resolve conflicts in medical testimony, and resolve ambiguities. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). The ALJ's findings must be supported by specific, cogent reasons. *Id.* If a claimant produces objective medical evidence of an underlying impairment, an ALJ may not reject a claimant's subjective complaints of pain based solely on lack of medical evidence. *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005). Where, as here, there is no affirmative evidence of malingering, the ALJ must provide clear and convincing reasons for rejecting pain testimony. *Id.* The reasons an ALJ gives for rejecting a claimant's testimony must be supported by substantial evidence in the record. *Regennitter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1296 (9th Cir. 1999).

In evaluating credibility, the ALJ may engage in ordinary techniques of credibility evaluation, including consideration of a claimant's reputation for truthfulness and inconsistencies in claimant's testimony, or between claimant's testimony and conduct, as well as claimant's daily activities, claimant's work record and testimony from physicians and third parties concerning the nature, severity and effect of the symptoms of which claimant complains. *Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002). Also,

**MEMORANDUM DECISION AND ORDER - 9**

the ALJ may consider the location, duration, and frequency of symptoms; factors that

precipitate and aggravate those symptoms; the amount and side effects of medications;

and treatment measures taken by claimant to alleviate those symptoms.  *See* Soc. Sec.

Ruling ("SSR") 96-7p.

> b.    *Petitioner's Daily Activities*

The ALJ first considered Petitioner's activities of daily living, and decided that the

Petitioner's daily living activities were "not limited to the extent one would expect given

the complaints of disabling symptoms and limitations."  AR 20.  The ALJ's treatment of

Petitioner's testimony about his activities is supported by specific evidence in the record.

*See, e.g., Valentine v. Comm'r*, 574 F.3d 685, 693 (9th Cir. 2009) (upholding ALJ's

credibility determination where testimony such as that petitioner exercised and undertook

several projects including gardening and community activities suggested that petitioner's

claims about the severity of his limitations were exaggerated).

Petitioner testified that he does "the housework" for his friends, AR 48, although

he sits or lays down between chores because of back pain.  AR 48-49, 396.[2]  He feeds a

dog and cats, cleans up dishes, and vacuums floors.  AR 263.  He also babysits for his

roommates' two year old daughter, sometimes four or five days per week, but not for "all

day".  AR 49, 51, 52; *see also* 263-64.  He can pick up the two-year old, but not for very

long and not very often.  AR 59.

---

[2]  In one instance, the Petitioner told a medical provider that his "obsessive" house
cleaning was irritating to his roommate.  AR 468.

**MEMORANDUM DECISION AND ORDER - 10**

This information supports the ALJ's determination that Petitioner's activities were not as limited as one would expect for someone alleging disability preventing all work. AR 20. *See Rollins*, 261 F.3d at 857 (allowing consideration of daily activities that are inconsistent with alleged symptoms as relevant to the credibility determination). Performance of chores such as preparing meals, cleaning house, doing laundry, shopping, performing occasional childcare, and interacting with others has been considered sufficient to support an adverse credibility finding when performed for a substantial portion of the day. *See, e.g.*, *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999) (explaining that the ALJ determined Petitioner's ability to fix meals, do laundry, work in the yard, and occasionally care for his friend's child served as evidence of his ability to work and that when a claimant "is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting, a specific finding as to this fact may be sufficient to discredit a claimant's allegations"). Moreover, the ALJ did not rely solely on Petitioner's activities in making his credibility assessment.

   c.  *Petitioner's Back Pain Testimony & Credibility*

Petitioner received his primary care over the last few years from doctors at the Garden City (Idaho) Clinic. He testified that none of those doctors put any limitations on his functional capacities, but that he was given restrictions in 2003 (before the alleged onset date) when he hurt his back working for H&H cleaning. AR 53-54. Petitioner also testified that he worked again after that injury, because he had to go back to work. AR

**MEMORANDUM DECISION AND ORDER - 11**

54.  Petitioner said he has "kind of given up" on treatment for his lower back because the only treatment is give him more pain medications.  AR 60.

The Petitioner strongly criticizes the ALJ's consideration of his back pain, which Petitioner contends is caused by ankylosing spondylitis.  Although Petitioner asserts that the record contains an express medical diagnosis of such a condition, the ALJ searched the record but could find no medical record with the ankylosing spondylitis *diagnosis*.  Ankylosing spondylitis is a disease that causes inflamation of the joints between the spinal bone, spine, and pelvis, and causes the impacted spinal bone to fuse together.  Pet.'s Br., p. 9 (Dkt. 13).  Petitioner cites to two medical records to support his argument that he has ankylosing spondylitis.  Neither, however, contains a *diagnosis* of ankylosing spondylitis; instead, the records contain self-history statements by Petitioner that he suffered from ankylosing spondylitis.  *See* AR 352 (noting "Ankolosis" under heading "MEDICAL HX / OBTAINED BY" PATIENT); AR 377 (noting "Ankylosing Spondylitis" as "Problem" number six on Patient Database form).  Accordingly, the ALJ did not error in finding that "[w]hile the claimant has alleged that he suffers from ankylosing spondylitis, there do not appear to be any medical records containing such a diagnosis."  AR 20.

Moreover, the AJL went on to conclude that even if Petitioner had been diagnosed with ankylosing spondylitis, the symptoms related to Petitioner's back are limited.  AR 20.  The ALJ based this conclusion on his finding of an overall lack of treatment notes related to Petitioner's back since his alleged onset date.  *Id.*  One exam did state that

**MEMORANDUM DECISION AND ORDER - 12**

Petitioner has a limited "ROM" (*i.e.*, range of motion), *see* AR 363, but that alone does not demonstrate that the ALJ erred in his consideration of the medical records or Petitioner's testimony.  There were several occasions when Petitioner sought medical attention for a variety of problems, but the treatment notes for those visits make little mention of back pain.  Specifically, Petitioner's records from the Garden City Community Clinic for June 2007 to July 2008 (AR 431-39), contain only two records related to his back, and only one record lists his back problems as a condition that was assessed.  AR 20, 432, 434.  While a lack of medical evidence cannot be the sole reason for rejecting pain testimony, "medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects."  *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).

The Court is also mindful that a person of very limited means, relying upon the stretched resources of health clinics serving people of low income, may see health practitioners infrequently and that their health problems may be extensive than those addressed in a particular visit.  Such circumstances are an unfortunate Catch-22 for many.  However, the Court cannot draw reasonable inferences of disability-causing health conditions from blanks in the medical record, and certainly cannot do so without more than exists in this record to justify overturning the ALJ's direct consideration of the available evidence on this issue.

Finally, although the ALJ described Petitioner's chronic back pain in his listing of Petitioner's severe impairments as "status post fusion", something Petitioner disputes that

**MEMORANDUM DECISION AND ORDER - 13**

he has, this assessment is supported by a medical record.  On June 17, 2008, a health care provider at the Garden City Community Clinic noted in the "Assessment & Plan" section of Petitioner's chart that he has "chronic back pain S/P fusion."  AR 432.  Accordingly, the Court cannot assume from the ALJ's statement that he misunderstood the nature of Petitioner's back condition.

### d. *Medication Side Effects*

Petitioner also faults the ALJ for discounting his complaints about side effects from medication usage.  Pet'r's Br., p. 15.  Petitioner alleged that he suffers the side effects of drowsiness, dizziness, and nausea.  AR 19.  The ALJ did not find sufficient support for these complaints in the medical records (AR 20) and addressed this issue at the hearing, asking Petitioner when he last told any health care provider about side effects from this medications.  Petitioner said it was in September of 2009.  AR 51.  The ALJ then looked at the medical record, and asked Petitioner why nothing in the medical record from that visit mentioned the side effects.  Petitioner testified that the providers might not have written it down but he told them about the side effects.  AR 52; *compare* AR 20, 474.

An ALJ may "draw inferences logically flowing from the evidence."  *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982).  Here, the ALJ was allowed to make inferences from the record and Petitioner's testimony and to factor that in when considering Petitioner's complaints about side effects from his medication.  The ALJ questioned Petitioner about the side effects at the hearing and noted at the hearing that

**MEMORANDUM DECISION AND ORDER - 14**

some of the medial records did not contain notes about those complaints.  AR 47.

Moreover, when further questioned, Petitioner explained that his doctors told him that

"there's going to be some mild side effects."  AR 47.  Accordingly, the Court finds no

error in the ALJ's consideration of medication side effects in relation to his credibility

determination.

>        *e.        Conclusion*

        Where, as here, there is substantial evidence in the record to support the ALJ's

credibility finding, the Court will not engage in second-guessing.  *Thomas v. Barnhart*,

278 F.3d 957, 959 (9th Cir. 2002).  In other words, if the evidence can support either

outcome, the Court may not substitute its judgment for that of the ALJ.  *Tackett v. Apfel*,

180 F.3d 1094, 1098 (9th Cir. 1999).  The Court reviews the administrative record as a

whole to determine whether substantial evidence supports the ALJ's decision.  *Vasquez v.

Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).  The issue is not whether the Court agrees with

the ALJ's credibility assessment, but whether the assessment is supported by the requisite

findings and record evidence.  Here, it is, and the Court will not substitute its own

assessment for that of the ALJ.  In short, the ALJ considered the entire case record and

gave clear and convincing reasons supported by substantial evidence for finding

incredible Petitioner's subjective complaints that his impairments prevented him from

performing all work.

>  **2.        The ALJ's Evaluation of Petitioner's Limitations**

**MEMORANDUM DECISION AND ORDER - 15**

Petitioner alleged both mental and physical impairments; but challenges here only whether the ALJ properly evaluated his physical impairments.  Specifically, Petitioner takes issue with the ALJ's assessment of his residual functional capacity ("RFC") at the level of light work, which requires frequent lifting of objects and six hours a day of walking or standing.  Pet.'s Br., p. 8 (Dkt. 13).  Petitioner submits that the ALJ failed to properly evaluate his physical symptoms and did not include "all established limitations" in the residual functional capacity assessment.  Pet.'s Br., p. 12 (Dkt. 13).

At the outset, the Court notes that the ALJ considered and gave weight to the opinions of at least two state agency reviewing physicians.  First, the ALJ considered a July 2008 Physical RFC Assessment in which Dr. Dickey opined that Petitioner could perform light level work.  AR. 21, 404-11.  The ALJ also gave some weight to Dr. Dickey's June 2007 Physical RFC Assessment, which also opined that Petitioner could perform light level work.  Dr. Dickey's assessment established exertional limitations in light of Petitioner's various alleged physical impairments.  AR 304-10.  There is no error in the ALJ's decision to give greater weight to Dr. Dickey's July 2008 opinion, because it was the more recent opinion.

The ALJ also considered and gave weight to the opinion of Dr. Coolidge, a state agency surgical specialist who reviewed Petitioner's medical records in October 2008 and concluded that Petitioner could perform light level work.  AR 21, 440-47.  The Court finds that the ALJ appropriately relied on these assessments in setting the RFC at light work with certain limitations, with the exception of any reliance on them to discount

**MEMORANDUM DECISION AND ORDER - 16**

limitations from Petitioner's sleep apnea and, to some extent, those from Petitioner's COPD.

### a.    *Ankylosing Spondylitis*

Petitioner argues that he has been diagnosed with ankylosing spondylitis.  Pet.'s Br., p. 9 (Dkt. 13).  He asserts that the ALJ misunderstood Petitioner's testimony and diagnosis and that the ALJ's rejection of Petitioner's reported symptoms from the ankylosing spondylitis is not supported by substantial evidence.  But, as addressed above in relation to the ALJ's credibility determination, the record contains no objective medical  findings or diagnosis of ankylosing spondylitis.

Moreover, the ALJ included and considered in his RFC finding some of the limitations identified by state agency physicians due to Petitioner's back condition.  AR 304, 405-06.  Drs. Dickey and Coolidge both opined that Petitioner could perform light level work.  AR 21, 441-45.

### b.    *Medication Side Effects*

Petitioner questions the ALJ's failure to assess any limitations for side effects caused by Petitioner's medications, "despite [Petitioner's] testimony" that the medications cause drowsiness and nausea.  Pet.'s Br., p. 11 (Dkt. 13).  As discussed in the credibility section, the ALJ found only inapposite references in the medical records to problems with medications (specifically, that Petitioner was having problems because his medications had run out, not because he was taking particular medications), and he

**MEMORANDUM DECISION AND ORDER - 17**

discussed this issue with Petitioner at the hearing.  Moreover, the ALJ provided

appropriate reasons for rejecting Petitioner's testimony about his limitations.

> c.    *Chronic Obstructive Pulmonary Disease ("COPD")*
>        *& Breathing Issues*

Petitioner also argues that his pulmonary function is significantly impaired, and

that his impaired breathing condition "is not in dispute."  Pet.'s Br., p. 10 (Dkt. 13).

Petitioner submits that the ALJ should have included limitations on his ability to walk,

stand, and sit based on Petitioner's difficulty breathing and the impact of his COPD.

Pet.'s Br., pp. 8-9 (Dkt. 13); *see* AR 63-66; 92-94.  The ALJ incorporated into

Petitioner's RFC the following limitations:  Petitioner must avoid concentrated exposure

to vibration, hazards, and fumes, odors, dusts, gases, poor ventilation, etc.  AR 19, 21

(ALJ's decision).  These limitations are supported by the state agency reviewing

physicians' reports.  *See, e.g.,* AR 405 (Dr. Dickey's July 2008 report).

The ALJ also noted Petitioner's statements that he experiences shortness of breath

and needs to lie down on a regular basis and referred to medical records diagnosing

Petitioner with COPD and evincing that Petitioner sought treatment for shortness of

breath.  AR 19-20.  However, although the ALJ did consider the impact of Petitioner's

COPD in some manner, the ALJ did not address in his decision the impact of Petitioner's

claimed shortness of breath, which is supported by medical records, other than to mention

this complaint and make a blanket statement that the ALJ had included in the RFC only

**MEMORANDUM DECISION AND ORDER - 18**

those alleged symptoms that can reasonably accepted as consistent with the objective medical and other evidence.

The record contains evidence of Petitioner's shortness of breath and his treatment for that complaint. *See, e.g.*, AR 383, 400. The ALJ's reliance on state agency reviewing physician reports does not suffice to support the limitations assessed where many of the records related to Petitioner's issues with shortness of breath were not considered in these reports. *See* AR 467-85 (medical records). Additionally, simply mentioning that these records exist, without discussing how they were considered, is not enough to support an assessment as to the number of hours the Petitioner can stand, sit, or walk in a work day, particularly where the vocational expert testified that, if Petitioner's testimony about his limitations on standing were accepted, he would not be able to sustain full time employment. AR 93-94. Under these circumstances, the ALJ should have considered and then explained why he was discounting any limitations that might be caused by shortness of breath. For this reason, the case will be remanded for the limited purpose of fully considering all limitations alleged to be caused by Petitioner's COPD, particularly the shortness of breath.

> d.      *Sleep Apnea*

Petitioner asserts that the ALJ did not include limitations based on the fatigue caused by his sleep apnea. Pet.'s Br., pp. 10-11 (Dkt. 13). In particular, Petitioner challenges the ALJ's reliance on reviewing physicians' reports even thought the physicians completed the assessments before Petitioner was diagnosed with sleep apnea.

**MEMORANDUM DECISION AND ORDER - 19**

Doctor Janat O'Donnell characterized Petitioner's sleep hypopnea/apnea syndrome as "severe". AR 482. Because the Court is remanding for consideration of the limitations caused by COPD, the ALJ is instructed to consider also any limitations caused by sleep apnea.[3]

## IV. CONCLUSION

The ALJ is the fact-finder and is solely responsible for weighing and drawing inferences from facts and determining credibility. *See Allen*, 749 F.2d at 579; *Vincent ex. rel. Vincent*, 739 F.2d at 1394; *Sample*, 694 F.2d at 642. If the evidence is susceptible to more than one rational interpretation, one of which is the ALJ's, the court may not substitute its own interpretation for that of the ALJ. *Key*, 754 F.2d at 1549.

As to the ALJ's determination regarding Petitioner's credibility, the evidence upon which the ALJ relied can reasonably and rationally support his conclusions, despite the fact that such evidence may be susceptible to a different interpretation by others.

However, the ALJ did not properly consider and then adequately explain why he was discounting any limitations caused by shortness of breath and fatigue related to Petitioner's COPD and sleep apnea. Therefore, the Court remands this action for further proceedings as to these two issues only.

---

[3] The ALJ noted that Petitioner was diagnosed with sleep apnea in November 2009, but did not discuss further the diagnosis or any limitations it might impose. AR 20. Additionally, Drs. Dickey and Coolidge did not have the opportunity to consider the November 2009 sleep apnea report in their review.

**MEMORANDUM DECISION AND ORDER - 20**

# V.  ORDER

Based on the foregoing, Petitioner's request for review (Dkt. 1) is GRANTED. This matter is remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this Memorandum Decision and Order.  *See Melkonyan v. Sullivan*, 501 U.S. 89, 99-100 (1991).  Specifically, the Commissioner shall consider the impact of Petitioner's COPD and sleep apnea on his ability to maintain employment and adequately explain why symptoms from these conditions, including shortness of breath and fatigue, should or should not be considered as limitations in assessing a residual functional capacity.



DATED:  **September 30, 2012**.

Honorable Ronald E. Bush
U. S. Magistrate Judge

**MEMORANDUM DECISION AND ORDER - 21**